IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TWEEN BRANDS INVESTMENT, LLC,     Case No. 2:15-cv-2663
                                                           Judge Gregory L. Frost
       Plaintiff,                                Magistrate Judge Elizabeth P. Deavers

v.

BLUESTAR ALLIANCE, LLC, et al.,

       Defendants.


**OPINION AND ORDER**

This matter is before the Court for consideration of Plaintiff Tween Brands Investment, LLC's ("Tween") motion for preliminary injunction (ECF No. 2), Tween's supplemental memorandum in support of its motion for preliminary injunction (ECF No. 45), Defendant Bluestar Alliance, LLC's ("Bluestar") response in opposition (ECF No. 53), and Tween's reply memorandum (ECF No. 55). The Court also considers Tween's motion to strike response in opposition to motion (ECF No. 56) and Bluestar's response in opposition (ECF No. 72). For the reasons that follow, the Court **DENIES** the motions.

**I.**     **BACKGROUND**

The issues in this case at the preliminary injunction stage are simple and narrow. Tween asserts that a preliminary injunction is necessary for two reasons: (1) to prevent Defendants from using a copyrighted photograph featuring five girls wearing Tween's Justice-brand designs, and (2) to prevent Defendants from using a daisy design that Tween created while it was a licensee of the Limited Too brand. The issue with respect to the photograph is whether Defendants' voluntary cessation of its use negates Tween's claim of irreparable injury. The issue with respect

1

to the daisy design is whether Tween can show a likelihood of success on the merits on the issue of whether it owns a valid copyright in the same.  The facts related to these issues are as follows.

This case involves the intellectual property associated with the brand "Limited Too," which is a brand for girls approximately seven to fourteen years of age (an age known as "tween").  The Limited Too brand (according to Plaintiff) was developed and originally marketed by the Limited Inc. women's clothing retail group and/or its affiliates (collectively, "the Limited").  In 1999, the Limited licensed the Limited Too intellectual property to Tween's predecessor (for ease of reference, Tween and its predecessors are collectively referred to as "Tween").  The license agreement between Tween and the Limited is referred to as the "License Agreement."

One of the trademarks that the Limited licensed to Tween is the Limited Too logo design, shown below:

LiMiTeD ✿ TOO

The Limited registered this mark on May 4, 1999.  This mark is listed on Schedule A of the License Agreement as one of the "Licensed Properties" that Tween was authorized to use.  (ECF No. 54-1, at PAGEID # 1022 (listing mark number 3813, "Limited Too and Design").)

In 2005, as a licensee of the Limited Too brand, Tween developed and used a daisy design (the "Daisy"). The Daisy is copied below:



Tween registered the Daisy with the United States Copyright Office. In the registration, Tween listed itself as the owner of the Daisy. Tween did not indicate in the registration that the Daisy was derived from any other source.

By 2009, Tween was operating 500-plus Limited Too stores pursuant to its license agreement with the Limited. That year, Tween renamed its stores "Justice."

The License Agreement terminated in January of 2015. On July 20, 2015, Defendant Bluestar Alliance, LLC ("Bluestar) announced that it had purchased the Limited Too intellectual property from the Limited. On its website, Bluestar displayed the Daisy as well as a photograph depicting five tween-aged models (the "Photograph"), among other information and images.

Tween sued Bluestar on July 28, 2015 and alleged that the Photograph depicts Justice models wearing Justice-brand clothing. Tween also alleged that Bluestar's use of the Daisy constitutes copyright infringement.

It subsequently became known that Bluestar had obtained the Photograph as part of a slide deck that Defendant The Beanstalk Group, LLC ("Beanstalk") provided to Bluestar in connection with its acquisition of the Limited Too intellectual property. Bluestar indicated to the Court that it believed it had purchased the Photograph as part of that acquisition. All parties now agree that the Photograph belongs to Tween and depicts Justice models and Justice clothing designs.[1]

Prior to receiving Tween's complaint, Bluestar had included the Photograph in branding materials and in a style guide sent to potential licensees. Bluestar asserts that less than ten licensees received these materials.

---

[1] Tween asserts that Bluestar used a version of the Photograph that it found online after having received the slide deck from Beanstalk. Even if true, this fact has no bearing on the issues before the Court.

Bluestar removed the Photograph from its website immediately after receiving notice of Tween's complaint.  Bluestar also prepared a new branding materials and a new style guide that does not contain the Photograph.  Bluestar "sent those revised materials to all LIMITED TOO licensees."  (ECF No. 54-1, at PAGEID # 961.)  In sending the revised materials, Bluestar instructed the licensees "to destroy the prior versions of those documents and to confirm by email that they had done so."  (*Id*.)  Bluestar confirmed that each licensee did so.  Finally, Bluestar "advised all LIMITED TOO licensees to take extra steps to ensure that no JUSTICE designs were copied for use with LIMITED TOO goods, and asked each licensee to confirm in writing that they understood the importance of this request."  (*Id*.)  Bluestar states that it does "not plan to use the Photo or the Designs depicted therein in any way going forward, and that is why we have instructed all licensees to destroy all copies of materials disseminated by Bluestar that included the Photo."  (*Id*.)  There is no evidence before the Court that Bluestar currently is using the Photograph in any way.

Bluestar does, however, intend to continue using and displaying the Daisy.  Bluestar's position is that the Daisy is derivative of the flower in the Limited Too logo and that, pursuant to the License Agreement, Tween does not own the rights to derivative works such as the Daisy.

Tween responds that it owns the Daisy.  In support of its position, Tween denies the similarly between the Daisy and the flower in the Limited Too logo, arguing that "the only similarly between the Daisy Design and the design element of the Limited Too design mark is that both have five petals."  (ECF No. 55, at PAGEID # 1061.)  Tween refers to the Limited Too daisy as "plain" in comparison to its "highly stylized Daisy design."  (*Id*. at PAGEID # 1062.)  Tween also argues that, despite its plain language to the contrary, the License Agreement was not intended to prevent Tween from using designs derived from the Limited Too trademark.

Tween concludes that "the parties only intended 'derivative' to apply to the LIMITED portion of the licensed marks" (rather than to the Limited Too marks).  (ECF No. 55, at PAGEID # 1067.)

The Court held an evidentiary hearing on Tween's motion for preliminary injunction on November 10, 2015.  During that hearing, Tween presented its Assistant Vice President of Marketing, Robyn Litner, as a witness.  Ms. Litner testified that substantial time and energy went into planning and executing the photo shoot that produced the Photograph.  According to Ms. Litner, the Photograph conveys a particular (and carefully crafted) message about Tween's brand.  Ms. Litner testified that she felt angry upon seeing the Photograph displayed on Bluestar's webpage because doing so portrayed the image and the designs depicted therein as Limited Too designs, when, in fact, they were Justice designs.  Ms. Litner did not have any evidence that Bluestar currently is using the Photograph.

Regarding the Daisy, Ms. Litner testified that it is a different shape and design than the daisy in the Limited Too logo.  Ms. Litner testified that Tween's Daisy is more fun, stylish, and young than the Limited Too daisy.  Ms. Litner did not create the Daisy nor does she know who created it.  After being shown numerous photographs of Limited Too merchandise that feature the Daisy (whether on the merchandise itself, on the hang tags associated with the products, and on the product labels in close proximity to the Limited Too logo), Ms. Litner acknowledged that Tween used the Daisy in connection with Limited Too products during the time it licensed the Limited Too brand.  Ms. Litner testified that, after the License Agreement terminated, Tween has used the Daisy on a Justice-brand perfume, Justice-brand shower gel, and a Justice-brand lotion product.  Tween did not provide photographs or other evidence of those products.

Tween did not present any additional witnesses at the oral hearing.  There is no evidence before the Court of Bluestar's continued use of the Photograph.

Bluestar presented its own witness, co-founder Ralph Gindi, at the oral hearing. Mr. Gindi testified that Bluestar "manages" brands by first purchasing the intellectual property associated with a brand. Bluestar then identifies licensees that can produce products under the brand, sends trend books to those licensees with Bluestar's idea of the brand's direction, and gets licensees to commit to producing certain products that, together, create a cohesive product line. Bluestar must approve the specific products that each licensee intends to produce. Bluestar eventually ensures that a cohesive product line is created.

The trend books (also called "brand books") contain images that Bluestar believes to depict current trends in the relevant market. These books sometimes include photographs of competitors' products. Mr. Gindi testified that the purpose of the books is not to encourage licensees to copy the products depicted therein, but rather to give licensees an idea of the type of products, trends, and the relevant market for the brand Bluestar is managing.

Mr. Gindi testified that Bluestar received the Photograph from Beanstalk, which acted as a broker in the sale of the Limited Too intellectual property. Bluestar believed it had purchased the Photograph as part of that intellectual property. Mr. Gindi testified that Bluestar displayed the Photograph on its website for a few days but removed it within a day of receiving notice of this lawsuit. Mr. Gindi further testified that it used the Photograph in brand books that it sent to potential licensees of the Limited Too brand. Mr. Gindi stated that the brand books were intended to provide an overview of the Limited Too brand for licensees.

Mr. Gindi testified that, after receiving notice of this lawsuit, Bluestar contacted the licensees to whom it had sent the brand books. Bluestar informed those licensees not to infringe on Justice's intellectual property. Bluestar then created new brand books that do not contain the Photograph and sent those books to the licensees, instructing the licensees to destroy the old

6

brand books. Mr. Gindi testified that Bluestar currently is not using the Photograph in any way. Mr. Gindi further testified that Bluestar must approve all products submitted by licensees and that, if a licensee presented a product that copied any of the Justice designs depicted in the Photograph, Bluestar would not approve that product.

Mr. Gindi also testified about the Daisy design. According to Mr. Gindi, Bluestar believes it purchased the Daisy in connection with the Limited Too intellectual property. Mr. Gindi considers the Daisy to be integral to the Limited Too logo. According to Mr. Gindi, Bluestar intends to continue using the Daisy in connection with its management of the Limited Too logo.

No other witnesses testified at the oral hearing. The Court will consider the parties' arguments regarding Tween's motion for a preliminary injunction below.

## II. ANALYSIS

### A. Standard of Review

To determine whether a preliminary injunction is warranted, the Court must consider the following factors: (1) whether Tween has demonstrated a strong likelihood of success on the merits, (2) whether Tween will suffer irreparable injury in the absence of equitable relief, (3) whether an injunction will cause substantial harm to others, and (4) whether the public interest is best served by granting the injunction. *See Cooey v. Strickland*, 589 F.3d 210, 218 (6th Cir. 2009) (citing *Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007)). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id.* (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). The Court "is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are

determinative of the issue." *Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 717 (6th Cir. 2003).  Although all four factors potentially are relevant to the Court's analysis, "equity has traditionally required [some showing of] irreparable harm before an interlocutory injunction may be issued." *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102–03 (6th Cir. 1982) ("[T]his court has never held that a preliminary injunction may be granted without any showing that the plaintiff would suffer irreparable injury without such relief.").

The Court is mindful that "[a] preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cty.Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).  For the reasons set forth below, Tween fails to meet its burden with respect to either the Photograph or the Daisy.

### B. The Photograph

Tween fails to meet its burden in demonstrating that it will suffer irreparable injury absent an injunction with respect to the Photograph.  There simply is no evidence before the Court that Tween is likely to suffer injury as a result of Bluestar's future use of the Photograph.

Tween does not suggest that Bluestar currently is using the Photograph.  In response to Bluestar's evidence that it ceased displaying the Photograph on its website immediately after receiving this lawsuit and that it sent revised brand books to its licensees instructing them to destroy the copy containing the Photograph, Tween offers the following arguments.

First, Tween argues that Bluestar cannot be trusted to cease using the Photograph in the future.  Tween asserts that Bluestar "attempt[ed] to hide the scope of its infringement" such that it lacks credibility.  (ECF No. 55, at PAGEID # 1069.)  The Court, however, does not share

Tween's cynical view of the evidence in this case.  The use of the Photograph in a trend book to potential licensees—many of which, Mr. Gindi testified, contain competitors' photographs to illustrate trends in the market—does not suggest to the Court that Bluestar "attempt[ed] to hide the scope of its infringement."  The Court similarly fails to see the relevance in any evidence that Bluestar received the Photograph from Beanstalk but found a clearer version of the same online.  As such, even if Tween were correct that "a request for preliminary injunction is not mooted" "[w]here it is unclear whether a party has ceased all infringing activity," (ECF No. 55, at PAGEID # 1069), that proposition of law does not apply to the facts of this case.

Second, Tween argues that Bluestar's actions in instructing licensees to terminate prior copies of the trend guide and to not infringe on Justice's intellectual property are insufficient to stop future infringement.  Tween states that Bluestar's emails to its licensees were ambiguous.  Tween further states that Bluestar waited almost a month before sending its licensees revised copies of the trend book and instructing licensees to destroy the prior version.

The Court rejects this interpretation of the evidence.  The fact that it took Bluestar twenty-six days to create new brand books, send them to licensees, and instruct licensees to destroy the old copy does not establish a likelihood of future harm.  And even if Bluestar's initial email was ambiguous, there is no ambiguity in its subsequent instruction that licensees cease using the prior version of the brand book and use only the revised version that does not contain the Photograph.  Such an instruction negates any likelihood of future harm.

Finally, Tween argues that there is no mechanism in place to prevent Bluestar's licensees from arguing that they believed they had the right to copy Tween's designs depicted in the Photograph.  This argument is not persuasive given Bluestar's instructions to its licensees and Mr. Gindi's testimony that Bluestar must approve every design that is submitted for production.

9

The Court has no reason to discredit Mr. Gindi's testimony that Bluestar would not approve of a design that copied the Justice designs in the Photograph.

In summary, Tween fails to meet its burden in demonstrating that it will suffer irreparable harm absent an injunction. The Court finds this factor to be dispostive in this case. *Cf. Friendship Materials, Inc*, 679 F.2d at 102–03. Regardless of whether Tween is likely to succeed on the merits of its claim that Bluestar infringed its copyright, there simply is no evidence before the Court of past or future damages caused by such infringement.

The public interest factors similarly do not aid Tween's position. Tween argues that there is no harm in entering an injunction while, "if an injunction is not entered, then Bluestar will consider itself free to continue to infringe." (ECF No. 45, at PAGEID # 429.) But Bluestar has acknowledged that it does not own the rights to the Photograph and has shown no signs of a desire or "freedom" to continue infringing on the same. Tween also asserts that an injunction serves the public interest because it will limit customer confusion, but there is no evidence that the Photograph has or will cause any "confusing" products to enter the marketplace. The weakness of Tween's arguments on these points suggests that even it does not believe that a preliminary injunction is warranted on this issue. The Court agrees and declines to award such an extraordinary remedy.

C. <u>The Daisy</u>

Tween fails to meet its burden in demonstrating that it is entitled to an injunction with respect to the Daisy. Although this issue presents a closer call than the Photograph, there exist too many factual questions at this point to conclude that Bluestar should be preliminary enjoined from using the Daisy.

### *1. Likelihood of Success on the Merits*

To establish a likelihood of success on the merits of its copyright infringement claim, Tween must establish two elements: "(1) ownership of a valid copyright; and (2) copying constituent elements of the work that are original without authorization." *Kessler v. Hrivnak*, No. 3:11-cv-35, 2011 WL 2144599, at *4 (S.D. Ohio May 31, 2011). The fact that a copyright owner registered and received a copyright is *prima facie* evidence of the copyright's validity. *See* 17 U.S.C. § 410(c). The opposing party, however, can rebut that evidence *See, e.g., Hi–Tech Video Productions, Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995); *Jedson Eng'g, Inc. v. Spirit Const. Servs., Inc.*, 720 F. Supp. 2d 904, 913 (S.D. Ohio 2010).

Here, Tween argues that its Daisy copyright is valid because it registered the same. Bluestar argues that the Daisy is derivative of the daisy in the Limited Too logo, the copyright of which Tween never owned. Bluestar argues that Tween's copyright registration is invalid because Tween did not disclose to the United States Copyright Office (at the time it registered the Daisy) that the design was derived from any source.

Pursuant to 17 U.S.C. § 106(2), a copyright owner has the exclusive right to "prepare derivative works based upon the copyrighted work" or to authorize the same. Derivative works are those "based upon one or more preexisting works." 17 U.S.C. § 101. "A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a 'derivative work.' " *Id.*

Case law in which courts adjudicated the issue of whether a work is "derivative" of a preexisting work is sparse. Factors relevant to this determination include whether the designs are "substantially similar," *Kohus v. Mariol*, 328 F.3d 848, 858 (6th Cir. 2003), whether there exists evidence of independent creation, *see, e.g., Taylor Corp. v. Four Seasons Greetings LLC*, No.

01-1293, 2003 WL 23527789, at *6 (D. Minn. Dec. 11, 2003), the relationship between the designer and the owner of the preexisting work, *see, e.g., Kessler v. Hrivnak*, No. 3:11-cv-35, 2011 WL 2144599, at *4–5 (S.D. Ohio May 31, 2011), and whether the designer was instructed to base his or her design on the preexisting work, *see, e.g., Garner v. Sawgrass Mills Ltd. P'ship*, No. 3-94-307, 1994 WL 829978, at *8 (D. Minn. Dec. 22, 1994), among other factors.

If a design is derivative of a pre-existing work, the designer must disclose that fact to the United States Copyright Office at the time of registration. *See, e.g., id*. Courts have invalidated copyright registrations in which the registrant failed to disclose that the design was derivative of a preexisting work. *See id*. Stated differently, "[t]he knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute reason for holding the registration invalid and thus incapable of supporting an infringement action." *Cannon Grp., Inc. v. Better Bags, Inc*., 250 F. Supp. 2d 893, 898 (S.D. Ohio 2003) (quoting *Russ Berrie & Co. v. Jerry Elsner Co*., 482 F.Supp. 980, 988 (S.D.N.Y. 1980)). "[I]n general, failure to disclose that the registered work is derivative of an earlier, underlying work should occasion rejection of the registration certificate only if the claimant was for some reason ineligible to register the derivative work." *Id*. (quoting Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 7.20(B) (2002)).

The first issue for the Court is whether the Daisy is derivative of the Limited Too logo. Tween offers only a common sense argument that the Daisy is not derivative of the Limited Too logo because the two designs do not look alike. Tween asserts that the Daisy is "highly stylized," (ECF No. 55, at PAGEID # 1062), while the Limited Too logo is plain. Tween does not offer any evidence about the process that led to the Daisy's creation.

12

There exist too many gaps in the evidence for the Court to accept Tween's argument. For one thing, the Court disagrees with Tween that the Daisy design is so different from the daisy in the Limited Too logo that the former clearly is not derived from the latter. The designs share many similarities. Absent any evidence about the process used in creating the Daisy, there is not enough evidence before the Court to conclude that Tween has established a high likelihood of success on this issue.

Tween argues that such a finding is without consequence because there is no evidence that it intended to deceive the Copyright Office at the time of registration. But circumstantial evidence again creates too many factual questions on this issue. The evidence could support a finding that Tween knew of the Limited Too logo and of the obvious similarities between the Limited Too logo and the Daisy at the time it filed its registration with the Copyright Office. It is undisputed that Tween did not notify the Copyright Office of the Limited Too logo. And although Tween cites cases stating that an "innocent misstatement, or a clerical error" cannot invalidate a copyright, (ECF No. 55, at PAGEID # 1064), it provides no evidence that any such omission was inadvertent in this case.

The parties do not substantively discuss the issue of whether the Copyright Office would have rejected Tween's registration had it known of the derivative nature of the work. Due to the holes in the evidence and the arguments, the Court cannot conclude that Tween has established a high likelihood of success on the issue of validity.

Other factual questions exist regarding the remaining arguments the parties raise on this issue. Bluestar argues that Tween is not entitled to a preliminary injunction because it agreed not to use derivations of the Limited Too's intellectual property after the License Agreement terminated. Bluestar offers the following language from the License Agreement: "Upon

13

termination of this Agreement . . . the parties agree that Licensor may by notice to Licensee require Licensee and its Subsidiaries to cease using the Licensed Properties or any derivation thereof in any form . . . ."  (ECF No. 53-4, at PAGEID # 894.)  The term "Licensed Properties" includes the registered Limited Too trademark.  *See id*. at PAGEID # 905.

Assuming *arguendo* that this language requires Tween to cease using the Daisy, it is unclear to the Court how that fact necessitates a finding that Tween no longer owns the Daisy and/or that Bluestar owns the same.  Bluestar carefully words its arguments to suggest that entering a preliminary injunction would be "at odds" with Tween's rights under the License Agreement.  *See* ECF No. 54, at PAGEID # 952.  Bluestar does not, however, explain the legal basis for its argument that the language in the License Agreement precludes Tween from preventing other parties from using the derivations it created.

Tween does not directly address this issue.  Instead, Tween argues that the License Agreement should not be interpreted consistently with its plain language.  Tween argues that the parties to the License Agreement did not intend to preclude Tween from using derivations of the Limited Too's intellectual property, despite the fact that that the License Agreement specifically defines the term "Licensed Works" to include the Limited Too logo and design.  Tween asserts that "the parties only intended 'derivative' to apply to the LIMITED portion of the licensed marks."  (ECF No. 55, at PAGEID # 1067.)  In support of this argument, Tween points to other provisions of the License Agreement and to extrinsic evidence regarding the Limited's conduct in enforcing this and similar agreements.

Because Tween makes these arguments in its reply brief, Bluestar did not have the opportunity to respond.  There has not, to the Court's knowledge, been any expedited discovery on the issue of the parties' intent in drafting the License Agreement.

Even if the cited language in the License Agreement is relevant to the ultimate issue of whether Tween owns a valid copyright in the Daisy, it would be premature at this point to conclude that Tween has established a high likelihood of success on the merits. There exist too many factual questions that preclude the Court from making any determination about Tween's likelihood of success on this claim.

*2. Irreparable Injury and the Public Interest Factors*

The remaining factors further support the Court's conclusion that Tween fails to meet its burden in establishing the need for a preliminary injunction. The undisputed evidence suggests that Tween used the Daisy design extensively in connection with branding and marketing products it sold under the Limited Too name. Although Tween's corporate representative testified, on cross examination, that Tween has used the Daisy on Justice-brand shower gels and lotions, this testimony was the only evidence of Tween's post-License Agreement use of the Daisy. Tween did not present any evidence that consumers associate the Daisy with Justice (as opposed to with Limited Too) or that it has made any effort to form this association in the marketplace.

Tween fails to satisfy its burden in demonstrating that monetary recovery would be inadequate if it prevails in this litigation. Tween argues that Bluestar's use of the Daisy would interfere with "the goodwill associated with Plaintiff's successful designs," (ECF No. 45, at PAGEID # 429), but there is no evidence that Tween currently profits from the goodwill association between the Daisy and the formerly-licensed Limited Too brand. There is no evidence of a goodwill association between the Daisy and Tween's Justice brand. The cases Tween cites, therefore, are distinguishable from this case. Tween does not offer any meaningful argument on this issue in its briefs.

Tween similarly fails to convince the Court that the public interest factors support its position with respect to the Daisy. Although the Court acknowledges the differences between copyright law and trademark law, there exists an irrefutable overlap between the two in this case. Issuing an injunction would prevent Bluestar—the current owner of the Limited Too brand—from using an image that has long been associated with the Limited Too brand, while potentially suggesting that Tween can use the same image in connection with its directly-competitive Justice brand. Prematurely issuing an injunction without having all the facts and arguments before the Court would create an unnecessary risk of confusion between the brands. The Court therefore cannot conclude that the public interest factors support a preliminary injunction in this case.

    D.  <u>Tween's Motion to Strike Response in Opposition to Motion</u>

As a final matter, the Court addresses Tween's motion to strike Ralph Gindi's declaration in Bluestar's memorandum in opposition to Tween's motion for preliminary injunction. (ECF No. 56.) Tween argues that it did not have the opportunity to question Mr. Gindi because Bluestar failed to present him as a Rule 30(b)(6) witness during expedited discovery. Tween further argues that the witness Bluestar provided, co-founder Joseph Gabbay, lacked knowledge on some of the topics on which Tween sought expedited discovery. Finally, Tween argues that Mr. Gindi lacked personal knowledge for some of the representations he made in his declaration.

Tween's arguments are not well taken. Tween had the opportunity to cross examine Mr. Gindi during the oral hearing on its motion for preliminary injunction, so any harm caused by the failure to present Mr. Gindi as Bluestar's Rule 30(b)(6) witness is moot. The Court also agrees with Bluestar that Tween waived its right to object to the declaration after it moved to admit the declaration as evidence during the November 10, 2015 oral hearing.

Regarding the lack of personal knowledge, Tween cites examples such as Mr. Gindi's statement that Tween was able to stop the automatic forwarding of website traffic between www.limitedtoo.com and www.shopjustice.com.  None of the examples Tween cites are relevant to this Opinion and Order.  Because the Court is aware that it need not accept conclusions of law set forth in affidavits, it declines to strike Mr. Gindi's declaration on this ground.

Tween's argument that the Rule 30(b)(6) deposition was improper similarly fails.  Tween argues that Bluestar was obligated to prepare Mr. Gabbay on the matters on which Mr. Gindi had knowledge.  Even if true, however, this argument is less persuasive in the context of expedited discovery in which Bluestar had three days to produce its deponent.  Bluestar elected to produce the co-founder of the company, Mr. Gabbay, who had been involved in prior discussions with the Court and with Tween's counsel.  The fact that Mr. Gabbay was "[n]ot a hundred percent sure" of certain answers, (ECF No. 62, at PAGEID # 1232)—none of which are relevant to this Opinion and Order—is not a compelling reason to strike Mr. Gindi's declaration.  The Court accordingly denies Tween's request.

### III.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Tween's motion to strike (ECF No. 56) and **DENIES** Tween's motion for a preliminary injunction (ECF No. 2).  Regarding Tween's pending motion to dismiss for failure to state a claim, the Court notes that Bluestar's amended counterclaims moot Tween's first such motion (ECF No. 49).  The Court therefore **DIRECTS** the Clerk to terminate this motion (ECF No. 49) from the Court's pending motions list.

**IT IS SO ORDERED.**

                                     **/s/ Gregory L. Frost**
                                     **GREGORY L. FROST**
                                     **UNITED STATES DISTRICT JUDGE**