IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TWEEN BRANDS INVESTMENT, LLC,**

    **Plaintiff,**

  v.                                            Civil Action 2:15-cv-2663
                                                    Judge Michael H. Watson
                                                    Magistrate Judge Jolson

**BLUESTAR ALLIANCE, LLC, et al.,**

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Bluestar Alliance LLC's ("Bluestar") and LTD2 Brand Holdings LLC's ("LTD2") (collectively "Defendants") motion to compel. (Doc. 125). For the reasons that follow, the motion is **GRANTED in part and DENIED in part** in accordance with this Opinion and Order. In addition, the parties are **DIRECTED** to submit a joint status report within fourteen days of this Opinion and Order.

### I. STANDARD

Federal Rule of Civil Procedure 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Moreover, Rule 37 of the Federal Rules of Civil Procedure allows for a motion to compel discovery when a party fails to answer interrogatories submitted under Rule 33 or to provide proper responses to requests for production of documents under Rule 34. *See* Fed. R. Civ. P. 37(a)(1), (3).

### II. DISCUSSION

On July 5, 2016, after the parties reached a discovery-dispute impasse, Magistrate Judge Deavers directed any party seeking to compel discovery to submit a letter briefing to the Court.

(Doc. 122). After receiving the parties' letter briefs, the Court determined that the better course was to consider the parties' dispute under the usual procedure for deciding motions. On August 8, 2016, the Clerk filed the parties' letter briefs on the docket as Defendants' motion to compel and Plaintiff Tween Brands Investment, LLC's ("Tween") response. (Docs. 125, 126). Defendants filed their reply on August 15, 2016. (Doc. 131). On the same day, this case was reassigned to the undersigned Magistrate Judge. (Doc. 130).

In their Motion now before the Court, Defendants contend that Tween's discovery responses to a number of Defendants' requests for production and interrogatories are deficient. (Doc. 125 at 1). The parties agree that the requests and responses at issue fall into five categories. Though the Court finds all five categories at least partially relevant to the claims and defenses in this case, most of the requests are—or have the potential to be—disproportionate to the needs of this case. Accordingly, and as explained below, the parties are **DIRECTED** to meet and confer regarding ways to engage in proportionate discovery in compliance with this Order. A joint status report that includes specific proposals is due to the Court within fourteen days of this Order.

    **A. Category 1: Discovery Concerning the Daisy Design (Requests 9, 14, and 28; and Interrogatory 6)**

By way of background, in 2005, as a licensee of the LIMITED TOO brand, Tween developed and used a daisy design (hereinafter, the "Daisy Design"). Tween registered the Daisy Design with the United States Copyright Office and listed itself as the owner of the Daisy Design. In the registration, Tween did not indicate that the Daisy Design was derived from any other source. On July 20, 2015, Bluestar announced that it had purchased the LIMITED TOO intellectual property from the Limited. The parties now dispute the rights to the Daisy Design.

Defendants' requests in Category 1 seek information relating to how the Daisy Design was used, what goods were sold under the mark by Tween, and information about consumers' perception of the Daisy Design. Defendants contend that the Daisy Design is derivative of the floral element of the LIMITED TOO logo that Defendants own, and that the information they seek pertains to their theory that the Daisy Design was created and used in close association with the LIMITED TOO trademark.

Tween resists production, arguing that the information sought is irrelevant to claims under the Copyright Act. But this case is about more than copyright. Defendants' defenses and counterclaims are founded in large part on the licensing agreement to which Tween was a party with Defendant LTD2's predecessor. (*See, e.g.*, Doc. 119, ¶¶ 35, 44–56). On this point, Defendants contend that the requested material is necessary to determine whether the Daisy Design is derived from the floral element of the LIMITED TOO logo. Further, they argue, the discovery could show that the Daisy Design was coupled with the LIMITED TOO mark more frequently over time—demonstrating that the Daisy Design is derived from the LIMITED TOO logo in which Tween has no continuing rights. In addition, Defendant LTD2's Lanham Act counterclaim for trademark infringement makes relevant: how a mark or design was used, sales figures relating to the mark, and information regarding consumers' perception of the mark. *See* 15 U.S.C. 1117(a) (Lanham Act specifically provides that "the plaintiff shall be entitled . . . to recover (1) defendant's profits"); *Kehoe Component Sales Inc. v. Best Lighting Prod., Inc.*, 796 F.3d 576, 589 (6th Cir. 2015) ("[T]he Lanham Act's general concern is with protecting consumers from confusion as to source . . . ." (quotations omitted)); *Fed. Exp. Corp. v. U.S. Postal Serv.*, 40 F. Supp. 2d 943, 956 (W.D. Tenn. 1999) ("[C]onsumer perceptions

3

are . . . critical to Defendant's liability under the Lanham Act . . . ."). Thus, as a general matter, the information in this category is relevant and discoverable.

The Court, however, acknowledges Tween's concern that compliance with this request may be overly burdensome. (Doc. 126 at 4 (asserting that "[s]omeone would . . . need to manually review each of the hundreds of thousands of items that Tween has offered for sale in the last 11 years")). To ensure proportionality, the parties must find a way for Defendants to receive the relevant discovery without overly burdening Tween. For example, the various middle-ground solutions the parties propose as to the other categories at issue should also be considered for these requests. (*See, e.g.*, Doc. 131 at 9 ("[T]he way to address those concerns is to order Tween to produce representative documents responsive to these Requests, or to identify the most knowledgeable individuals with certain information, and allow Defendants to follow up as necessary . . . .")). Accordingly, the parties must submit a joint status report within fourteen days of this Order regarding their discovery strategy for Category 1.

**B. Category 2: Historical Use and Sales of IT'S A GIRL'S WORLD (Requests 16 and 20)**

In the next category, Defendants seek documents relevant to how Tween has used the IT'S A GIRL'S WORLD trademark since its inception in 2004, as well as the sales achieved under the mark. The discovery Defendants seek under this category—even discovery predating January 1, 2014—is relevant to a number of the claims and defenses in this case. Defendant LTD2 claims that Tween's use of the IT'S A GIRL'S WORLD trademark violated the Lanham Act. (*See, e.g.*, Doc. 119 at 31, ¶¶ 57–61). Tween contends that it owns that mark. (*See* Doc. 116 ¶¶ 141–47). Defendants counter that Tween abandoned the mark. (Doc. 119 at 13, ¶ 8).

While the discovery Defendants seek is relevant, the Court again has concerns regarding proportionality and acknowledges Tween's concern that compliance might be overly

4

burdensome. The parties are therefore directed to meet and confer, and, consistent with standards of proportionality and the substantive law governing the claims implicated by Requests 16 and 20, address their discovery strategy for Category 2 in their joint status report. In crafting their strategy, the parties must consider what is required to show abandonment. *See, e.g.*, *NetJets Inc. v. IntelliJet Grp., LLC*, 602 F. App'x 242, 245 (6th Cir. 2015); *see also Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 1368–69 (Fed. Cir. 2015) (regarding abandonment in the context of "tacking," which involves the issue of whether "change[s] in the form of a mark" over time "constitute abandonment or a break in continuous use").

    **C. Category 3: Conversion from LIMITED TOO to JUSTICE (Requests 31–35 and 37–38; Interrogatories 8 and 14)**

Relevant to this category, Defendants contend that Tween has engaged in a deliberate scheme to misappropriate the goodwill associated with the LIMITED TOO trademark and use the mark to bolster Tween's JUSTICE brand. To support their claim, Defendants seek discovery regarding: Tween's use of and sales under the LIMITED TOO mark since 2008 or 2009; Tween's decision to stop using the LIMITED TOO mark in 2009; Tween's conversion of LIMITED TOO stores to JUSTICE stores; any efforts by Tween to communicate that JUSTICE and LIMITED TOO are or were affiliated; documents disclosing all stores owned or operated by Tween as of 2009 that contained floral fixtures (which Defendants claim to own as part of their acquisition of LIMITED TOO); and documents regarding Tween's decision to install these floral fixtures in its stores.

The Court agrees that this discovery is relevant to LTD2's counterclaims. (Doc. 119 at 31, ¶¶ 68–78 (asserting, *inter alia*, a Lanham Act claim)). And contrary to Tween's argument, the allegations related to this claim begin in 2008. (*Id.* ¶¶ 29–31). The discovery in this category

is therefore relevant. (*Id.* ¶¶ 29–31, 68–78); *see also* 15 U.S.C. § 1117(a) (trademark infringement allows courts, depending on "the circumstances of the case," to assess up to "three times" the amount of actual damages); *La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 343 (6th Cir. 2010) (holding that, in assessing Lanham Act damages, courts must "weigh[] the equities of disputes on a case-by-case basis, considering a wide range of factors including, inter alia, *the defendant's intent to deceive*" (emphasis added)).

As to Tween's arguments that the discovery is overly broad or unduly burdensome, a number of Defendants' requests are reasonable or sufficiently specific. (*See, e.g.*, Doc. 125-1 at 16–19 (Requests 32, 37, 38); Doc. 125-2 at 15 (Interrogatory 14)). To the extent Tween contends the remaining requests are too broad and overly burdensome, the Court finds Defendants' proposal a fair solution: Tween must produce representative documents responsive to the requests, or identify the most knowledgeable individuals as to the information sought, and Defendants may then follow up as necessary. Finally, the Court denies, without prejudice, Tween's request for cost-shifting.

### D. Category 4: Tween's Documents Concerning Defendants (Requests 10, 11, and 26)

In Category 4, Defendants seek: documents in Tween's control concerning Bluestar or LTD2 that were created before this case began; all non-privileged communications with third parties concerning Bluestar or LTD2; and all documents concerning the acquisition of the LIMITED TOO mark by LTD2. Defendants contend that such information bears directly on their claims that Tween brought this lawsuit as part of anti-competition effort to prevent Defendants from benefitting from the goodwill associated with the LIMITED TOO brand. Moreover, Defendants argue, this information is relevant to the issue of attorneys' fees, which, depending on the circumstances, can be awarded in cases involving copyright and trademark

6

claims. Tween responds that it has agreed to produce documents responsive to these requests to the extent they concern any of the intellectual property at issue in this case, and to the extent they are dated after LTD2's acquisition of the LIMITED TOO brand. Documents beyond these limitations, Tween argues, are irrelevant.

Tween brings claims under the Copyright Act. (*See, e.g.*, Doc. 116 ¶¶ 62–70). "The Copyright Act provides that in civil suits the district court, in its discretion, may award costs, including reasonable attorneys' fees, to the prevailing party." *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 592 (6th Cir. 2008) (citing 17 U.S.C. § 505); *see id.* ("This discretion must be exercised in an evenhanded manner with respect to prevailing plaintiffs *and prevailing defendants . . . .*" (emphasis added)). "When considering a request for fees and costs," courts weigh several factors, "including frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.*; *see Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 896 (6th Cir. 2004) (holding that litigation strategy and motivation for bringing litigation are relevant to the issue of fees and costs for claims under the Copyright Act).

Additionally, Tween brings Lanham Act claims under 15 U.S.C. § 1125(a). (Doc. 116 ¶¶ 142, 149). According to 15 U.S.C. 1117(a), "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party" for "a violation under section 1125(a)." *See U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997) ("Section 1117(a) grants a district court a great deal of discretion in fashioning an appropriate remedy in cases of trademark infringement."). The Sixth Circuit has defined an "exceptional case" as one "where a plaintiff brings a suit that could fairly be described as oppressive." *Eagles, Ltd. v. Am. Eagle Found.*, 356 F.3d 724, 728 (6th Cir. 2004) (quotations omitted). "The test" for whether a

suit is oppressive "requires *an objective inquiry into whether the suit was unfounded when it was brought* and a subjective inquiry into the plaintiff's conduct during litigation." *Id.* at 729 (emphasis added). Moreover, "[a]warding attorney's fees to a prevailing defendant is meant to provide protection against *unfounded suits brought by trademark owners for harassment and the like*." *Id.* at 729 (emphasis added).

In short, both the Copyright Act and the Lanham Act expressly allow for attorneys' fees for the prevailing party. And the Sixth Circuit has held that a party's motivation for bringing a suit under both statutes is relevant to the issue of whether attorneys' fees should be awarded. Tween's motive for bringing this suit against a potential competitor is therefore relevant, and it is relevant beyond the intellectual property at issue. In addition, given the allegations relating to the parties' relationship prior to 2015 (*see, e.g.*, Doc. 116 ¶¶ 8–11, 18–27; Doc. 119 at 14, ¶¶ 1–43), such discovery is relevant before 2015.

However, the Court agrees with Tween that the document requests, as written, are overly broad and unduly burdensome. The parties must meet and confer and submit a joint status report within fourteen days of this Order regarding their discovery strategy for Category 4.

Finally, to the extent Tween has legitimate concerns regarding the disclosure of commercially sensitive material, the parties may produce such documents in accordance with the protective order, which includes a "HIGHLY SENSITIVE – ATTORNEY EYES ONLY" designation. (*See, e.g.*, Doc. 37 at 2, ¶ 1.2(b)).

**E. Category 5: Documents Concerning Tween's Use of Third-Party Clothing Designs (Requests 46–48)**

In the final category at issue, Defendants seek the following: all Tween presentations since January 1, 2012, containing third-party products or clothing designs; all images of third-party products or clothing designs downloaded or otherwise obtained by Tween since January 1,

8

2012; and all trend presentations or brand books created by or for Tween since January 1, 2012. (Doc. 125-1 at 23–24). Defendants assert that Tween executive Robin Lintner's testimony at the preliminary injunction hearing demonstrated that Tween employees seek out third-party products and images in an effort to understand market trends. Despite this, they argue, Tween has brought suit against Defendants for doing something similar—placing third-party images, and specifically images associated with Tween, in brand books and trend guides distributed to actual and potential licensees. Defendants contend that Tween's conduct along similar lines is relevant to Defendants' fair-use defense, under 17 U.S.C. § 107, to Tween's copyright claims.

According to 17 U.S.C. § 107, "the fair use of a copyrighted work . . . is not an infringement of copyright." The statute points to the following four factors for the the analysis of "whether the use made of a work in any particular case is a fair use":

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. Courts use these factors to "avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Balsley v. LFP, Inc.*, 691 F.3d 747, 758 (6th Cir. 2012) (quotation omitted)).

The parties' dispute on this issue presents a close question. On Tween's side, Tween argues correctly that it was entitled to discovery of similar conduct by Defendants because Tween has brought copyright claims based on such conduct, but Defendants did not counter with copyright claims against Tween based on Tween's own similar conduct. Moreover, it is not

immediately clear which factor applies to the documents Defendants seek.  But the fact that no factor clearly applies is not necessarily dispositive given that the factors are "nonexclusive." *Stewart v. Abend*, 495 U.S. 207, 236 (1990); *see Balsley*, 691 F.3d at 758 (counseling against "*rigid* application of the copyright statute" when it would "stifle the *very creativity which that law is designed to foster*" (emphasis added)).  Moreover, Defendants' argument has intuitive appeal.  Given the plain meaning of the word "fair," it would seem unjust for Tween to prevail on a claim when it engages regularly in conduct that would also violate the Copyright Act, or, at minimum, is industry practice.  Finally, in the middle, the parties did not devote extensive briefing or case analysis to the issue of whether the documents Defendants seek can inform, as a matter of law, the fair-use analysis.

The parties, however, have already compromised somewhat regarding this category.  Tween has agreed to produce brand books responsive to the requests at issue, and Defendants have limited their requests under this category to trend guides and brand books depicting third-party images of apparel products only, and to ten such guides and books in each of 2012–2015.  The Court finds that this is a fair concession at this stage of the proceedings, and Defendants' motion is granted to the extent it seeks discovery consistent with Defendants' proposed limitation.  As to whether this information ultimately affects the fair-use analysis, the parties of course may brief this issue in a dispositive motion.  Finally, to the extent Tween has legitimate concerns regarding commercial sensitivity, the parties may produce such documents in accordance with the protective order.  (*See, e.g.*, Doc. 37 at 2, ¶ 1.2(b)).  Defendants' motion as it pertains to the fifth category is therefore granted in part and denied in part in accordance with the above.

### III. CONCLUSION

For the reasons stated, the motion to compel (Doc. 125) is **GRANTED in part and DENIED in part** in accordance with this Opinion and Order.  In addition, the parties are **DIRECTED** to submit a joint status report within fourteen days of this Opinion and Order regarding Categories 1, 2, and 4, to jolson_chambers@ohsd.uscourts.gov.

### Motion to Reconsider

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); Eastern Division Order No. 14-01, pt. IV(C)(3)(a). The motion must specifically designate the Order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days after.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This Order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge.  S.D. Ohio Civ. R. 72.3.

IT IS SO ORDERED.


Date: September 22, 2016				/s/ Kimberly A. Jolson
						KIMBERLY A. JOLSON
						UNITED STATES MAGISTRATE JUDGE